Kenneth HAMMARSTROM and Mary Jane Hammarstrom, and Greg McConnell and Kristi McConnell, Plaintiffs–Respondents,

v.

Rick SAMSEL, Defendant–Appellant.

No. 25264.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 24, 2003.

M. Douglas Harpool, Tamara de Wild, Cunningham, Harpool & Cordonnier, L.L.C., Springfield, for appellant.

Paul G. White, Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for respondents.

JOHN E. PARRISH, Judge.

Kenneth Hammarstrom, Mary Jane Hammarstrom, Greg McConnell and Kristi McConnell (plaintiffs) brought an action against Rick Samsel (defendant) in which they sought to enjoin defendant from attaching a residential building to property in Scenic Heights, a subdivision in Greene County, Missouri. Plaintiffs contended that moving the building onto and attaching it to the property would violate subdivision restrictions. A temporary injunction was issued. Following trial, permanent injunction was entered restraining and enjoining defendant from attaching or attempting to attach the residential structure to the real estate in question. Defendant was further ordered to remove the residential structure from the lot to which it had been transported. Defendant appeals. This court reverses and remands with directions to enter judgment for defendant.

■ An action that seeks injunctive relief is an action in equity. *River Corp. v. Redpath*, 466 S.W.2d 140, 144 (Mo.App. 1971). "The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law." *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo.App.1991).

■ "The rules governing construction of restrictive covenants on realty are generally the same as those applicable to any covenant or contract." *Stolba v. Vesci*, 909 S.W.2d 706, 708 (Mo.App.1995). Appellate review of contract construction is a question of law; hence it is *de novo*. *Mackey v. Griggs*, 61 S.W.3d 312, 315 (Mo. App.2001). Restrictive covenants on realty are strictly construed as the law favors untrammeled use of real estate. *Id.* The burden of proving that the use being made of real estate is in violation of restrictions

is on the party seeking to enforce the restrictions. *Daniel v. Galloway,* 861 S.W.2d 759, 761 (Mo.App.1993). Any reasonable doubt as to the meaning of restrictive covenants is to be resolved in favor of the free use of land. *Id.*

Plaintiffs own lots in Scenic Heights. The Hammarstroms own Lots 2 and 3. The McConnells own Lot 29. They maintain residences on their respective properties. In 2001, defendant and his wife purchased Lot 32 in Scenic Heights. The following year, defendant moved a residence and garage onto that lot. The residence and garage had been constructed about 1978.

Covenants and Restrictions Affecting Scenic Heights Subdivision, Greene County, Missouri, were recorded in the Greene County Recorder's Office May 9, 1979. Restriction No. (2), the restrictive covenant plaintiffs sought to enforce, states, "No old house or other building shall be moved and placed upon any lot."

■ This case was tried without a jury pursuant to Rule 73.01. The record on appeal reflects no request for a statement of grounds by the trial court for its decision or request for findings of fact as permitted by Rule 73.01(c). There is nothing in the record on appeal denominated as an opinion or statement of grounds for the trial court's decision, nor is there anything designated as findings of fact. Defendant included in the legal file, however, a copy of a letter dated January 31, 2002, from the trial judge to the parties' respective trial attorneys. The letter quotes the restrictive covenant that is the subject of the controversy in this appeal. It summarizes arguments of the respective attorneys regarding the issues in dispute and states that the temporary injunction sought by plaintiffs would be granted. The legal file includes a copy of a second letter from the trial judge to the attorneys dated August 29, 2002, stating that, for the same reasons stated in the trial judge's original letter, the restrictive covenant is enforceable and that the trial court was finding for plaintiffs. The letter directed plaintiffs' trial attorney to prepare a judgment for the judge's signature.

In previous cases, this court has questioned whether texts of letters from trial judges to attorneys are matters of record for consideration on appeal. *See Daniel v. Indiana Mills & Mfg., Inc.,* 103 S.W.3d 302, 318–19 (Mo.App.2003); *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 397 (Mo.App. 1992); *State v. Magill,* 801 S.W.2d 725, 727–28 (Mo.App.1990). Problems with considering letters between trial judges and attorneys as findings or statements of grounds for decisions include no notations identifying such documents as "findings," or "opinion," or "grounds for decision." Other concerns have been the lack of circuit court "date-file stamps" on copies of correspondence and no references on trial court docket sheets to the letters; no indication that copies of the letters were filed or recognized as anything but transmittal letters. *Daniel v. Indiana Mills, supra; Ibrahim v. Ibrahim, supra,* n. 1; *State v. Magill, supra,* at 728.

Rule 81.12(a) states that the legal file component of a record on appeal should contain "portions of the trial record previously reduced to written form." Portions of trial records that are in written form may include documentary evidence that is labeled as exhibits and shown by the transcript to have been admitted in evidence (or if refusal of a tendered exhibit is a question on appeal, the exhibit that has been offered and refused may be included), and documents filed with the court clerk identified with date-file stamps and noted in the court file as having been filed.

■ For the reasons that follow, however, this court concludes that the statements in the trial court's letters to the trial attorneys may be considered in this appeal as statements of the grounds and findings of the trial court on which the case was decided.[1] Docket entries that are part of the legal file reflect on "1/31/02" that "COURT RULES ON TEMPORARY INJUNCTION AND NOTIFIES COUNSEL BY LETTER (FAX)," and on "9/03/02" that "COURT RULES AND NOTIFIES COUNSEL BY LETTER. ATTY WHITE [plaintiffs' trial counsel] TO PROVIDE A JUDGMENT FOR THE COURT'S SIGNATURE." Further, plaintiffs, in their respondents' brief, quote from the January 31, 2002, letter at some length. Arguably, unlike in *Magill* and *Ibrahim,* the trial court intended the text in the January 31 letter to be a statement of grounds and findings on which the case was decided.

The text of the January 31, 2002, letter from the trial judge includes:

> This case involves construction of a restrictive covenant in a subdivision which provides "no old house or other building shall be moved and placed upon any lot". The defendant has moved a house from a previous location which was built in the late 70's and is roughly the same age as many of the houses existing in the subdivision. For this reason, [defendant's trial attorney] argues that the house in question is not an "old" house; hence the restriction does not apply.
>
> [Plaintiffs' trial attorney] argues that this house is in fact an "old" house because as it is it is not a new house and implies that the covenants are designed

to require new construction on a lot rather than moving in an existing structure.

> My view is that the word "old", in this context, means what the Webster definition says in its number four definition, "made or produced some time ago; not new". The number one definition under Webster is "having lived or being in existence for a long time; aged". If we view it in this light, I still think the definition favors the plaintiff [sic] because I think the definition must be taken in the context of the date the house is moved, not the date the restrictive covenants were drafted. In this way, we are dealing with a twenty some year old house which is, by housing standards, clearly not a new house. It is therefore an old house. I'm afraid we go down a very slippery slope if we start accepting gradations of new to old. Unlike human beings, there are not teenager houses nor middle age houses, there are simply new ones or old ones.
>
> · · ·
>
> I grant the Temporary Injunction....

The trial judge's August 29 letter stated, "For the same reasons that I stated in my original letter, I believe that this covenant is enforceable. Therefore, I find in favor of the Plaintiffs. [Plaintiffs' attorney] is directed to prepare a judgment for my signature."

■ Defendant's first point on appeal argues the trial court erred in entering the injunction prohibiting him from affixing the residence and garage in question to Lot 32 in Scenic Heights and directing him to remove those buildings from that property. Defendant contends the trial court

---

1. In order to avoid confusion on appeal, this court suggests that written grounds and findings by trial courts be delineated as such and filed with the clerks of those courts when issued; that correspondence advising attorneys of dispositions of cases be limited to transmitting written documents filed in cases or quotations from docket entries or copies of judgments entered.

misapplied the law to the facts of the case; that the meaning of the restriction on which the trial court relied is ambiguous. Defendant contends the trial court interpreted the restriction contrary to the requirement that restrictive covenants be read narrowly in favor of free use of property.

The trial court's determination was founded on two conclusions. The first was that the restriction in question "was designed to require new construction on a lot rather than moving in an existing structure." The second was that the meaning of the restriction must be gleaned from "the context of the date the house is moved, not the date the restrictive covenants were drafted."

Both sides in this appeal have cited a Texas case, *York v. Howard*, 521 S.W.2d 344 (Tex.Civ.App.1975), in support of their respective positions. In *York*, the court reviewed a restriction on parcels within a 30–acre development that "no old house may be moved onto the tract of land ... and only new construction of a masonry type may be used for a one-family dwelling with a minimum of 1600 square feet of living area." *Id.* at 345. An owner of property subject to the restriction attempted to move a frame house onto their lot and began preparing a foundation. The owners intended to remove the roof of the structure to its ceiling, add new construction to and around the structure, remove and resize windows to blend with the new construction, and brick veneer the exterior walls to the top of the structure's windows. An injunction was issued prohibiting the owners from proceeding with these undertakings.

*York* affirmed the judgment that granted the permanent injunction. The court held that the restriction in that case had "no defeating ambiguity in its language"; that the restriction "was designed to re-

quire that the houses constructed on the property be wholly of new construction of masonry-type, and that they otherwise meet the requirements of the restrictions as to size and use." *Id.* at 347.

Defendant argues the restriction in this case, unlike the restriction in *York*, does not include language explaining the type of construction required in the subdivision. Defendant argues that *York* gleaned the meaning of "old" in its restriction from the language that "no old house may be moved onto the tract of land ... *and only new construction of a masonry type may be used....*" (Emphasis added.) Plaintiffs' argue, however, that the part of the holding in *York* directed to parts of the restriction mandating new construction and masonry type construction or whether the building in *York* satisfied the square footage requirement in the restriction "is irrelevant to the question whether it was 'old.' "

This court does not find plaintiffs' argument persuasive that the verbiage in the restriction in *York*, other than the reference to an "old" house, was not relevant to the decision in the case. As noted above, in affirming the trial court, *York* concluded that the language of the restriction "was designed to require that the houses constructed on the property be wholly of new construction of masonry-type, and that they otherwise meet the requirements of the restrictions as to size and use." *Id.* at 347. That determination was based on the plain language of the restriction considered in its entirety, the means by which a court determines if a restriction is susceptible to more than one construction. *See, e.g., Stolba v. Vesci, supra.* It was not based on a construction of only part of the language in the restrictive covenant.

The restriction in this case has no language that permits a property owner or court to determine what "old" is intended to mean. Unlike *York*, no language fol-

lows the reference to "old house" that identifies what the restriction was designed to accomplish. There was testimony at trial by a linguist and a realtor that supports defendant's argument that the reference to "old house" is susceptible to multiple meanings. Definition of the term is left to subjective determination. No objective references are included in the restrictive covenant that permits ascertainment of what, for purposes of the restriction, "old house" is intended to mean. Is it a house that has never before been occupied? Is it a house that was originally constructed some time previous? If so, how long before it was moved? When is the applicable date for ascertaining if a house is old? Albeit that the trial court chose to evaluate the term "old" "in the context of the date the house [was] moved," *Daniel v. Galloway, supra*, holds that "[t]he critical time in determining what was intended by the restrictions is at the time the subdivision was platted."

▊ The restrictive covenant in question is indefinite. It is reasonably susceptible to more than one construction and is, therefore, ambiguous. Plaintiffs had the burden of proving the use defendant was making of the property was in violation of the restriction. The ambiguity of the restrictive covenant makes this an untenable task. Words of a restrictive covenant are not to be extended by implication. *Daniel*

*v. Galloway, supra*. "[A]ny reasonable doubt as to their meaning is to be resolved in favor of the free use of land." *Id.* The trial court misapplied the law in finding for plaintiffs. Point I is granted. Point I is dispositive; therefore, Point II is moot.

The judgment granting permanent injunction is reversed. The case is remanded with directions to dissolve the temporary and permanent injunctions heretofore imposed and enter judgment for defendant.

SHRUM, J., concurs.

RAHMEYER, C.J., dissents in separate opinion.

NANCY STEFFEN RAHMEYER, Chief Judge, dissenting.

I respectfully dissent and would defer to the judgment granting a permanent injunction for the simple reason that I find no ambiguity in the term "old" as applied to a house in the restrictive covenant at issue. As the trial court aptly stated, the twenty-year-old house is "clearly not a new house" and is, therefore, an old house.