Lee Carol JORDAN, et ux, Appellant,

v.

Frederick J. PEET, Jr.,
et al., Respondent.

No. WD 75822.

Missouri Court of Appeals,
Western District.

Sept. 24, 2013.

G. Michael Baker, Springfield, MO, for appellant.

Zachary W. Rennick, Washington, MO, for respondent.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

LISA WHITE HARDWICK, Judge.

Lee Carol Jordan and Grace A. Jordan appeal the circuit court's grant of summary judgment in favor of Frederick J. Peet, Jr., on their petition for damages for the wrongful death of their daughter. The Jordans contend the court erred in granting summary judgment because genuine issues of material fact remain as to whether Peet was negligent. For reasons explained herein, we reverse and remand the case for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

In August 2002, the Jordans' daughter, Melissa, died when the SeaDoo personal

water craft she was riding collided with the boat that Peet was operating on the Lake of the Ozarks. The alleged driver of the SeaDoo, Jennifer Stewart, also died.

The Jordans filed a wrongful death action against Peet and Stewart's estate in April 2008.[1] In their claim against Peet, the Jordans alleged that he negligently failed to operate his boat with the highest degree of care, in that he (1) failed to keep a careful lookout; (2) knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time to have slackened his speed, swerved, sounded a warning, or done any combination of those acts, but he failed to do any of them; and (3) was operating and driving his boat at a speed that was too fast in light of existing conditions. The Jordans further alleged that Peet's negligence directly caused or contributed to cause their daughter's death.

Peet served discovery, which included interrogatories and a request for production of documents, on the Jordans. The Jordans served responses to the discovery in December 2011. In Peet's interrogatories, he asked the Jordans for the names of all persons who witnessed the occurrence alleged in the petition and all persons having knowledge of the causes or possible causes of the occurrence. In response to both of those questions, the Jordans answered, "See water patrol report." Peet also asked whether the Jordans possessed any statement by any party purporting to have knowledge of any relevant facts in the case. The Jordans responded, "None other than water patrol report." Similarly, in his request for production of documents, Peet asked the Jordans for all statements or memoranda of statements of any person having knowledge concerning

the facts of the case. Consistent with their interrogatory responses, the Jordans answered, "Contained in water patrol report."

Peet subsequently filed a motion for summary judgment. In the motion, he listed what he asserted were thirty-one uncontroverted facts. His uncontroverted facts included statements that: (1) the Jordans' discovery responses averred that the names of all witnesses to the accident and all statements by those witnesses were contained in the water patrol report and that no other witnesses or statements existed outside of the water patrol report; (2) absolutely no witness listed in the water patrol report stated any facts to support the Jordans' allegations that Peet failed to keep a careful lookout, that he had time to slacken his speed, swerve, or sound a warning, or that he was operating his boat at a speed that was too fast in light of the existing conditions; (3) Stewart maneuvered the SeaDoo and rapidly accelerated in Peet's direction in an apparent attempt to jump the wake created by the boat in front of Peet's boat; (4) both Stewart and Melissa Jordan failed to look in Peet's direction prior to intersecting his course; (5) Peet took the immediate evasive action of cutting back on the throttle when he realized the SeaDoo was intersecting his course; (6) at the time of the accident, Stewart was intoxicated, with a blood alcohol level of .137%; (7) Corporal Randall Henry, the officer who investigated that accident and wrote the water patrol report, opined that the primary cause of the accident was Melissa Jordan's inexperience in operating a personal water craft and that her inattention and failure to keep a proper lookout were contributing factors; and (8) Corporal Henry opined

1. The Jordans alleged in the petition that Stewart was negligently operating the SeaDoo at the time of the accident. Because the Jordans failed to obtain service on Stewart's estate, the case proceeded only against Peet.

that Peet did everything he could to avoid the collision and bore no fault in the accident.

To support his uncontroverted facts, Peet attached a copy of the water patrol report, the Jordans' responses to his discovery requests, and the forensic laboratory report on Stewart. Peet argued that he was entitled to judgment as a matter of law because a reasonable juror could not view the undisputed evidence and determine that he breached the duty of care he owed to Melissa Jordan.

The Jordans filed a one-paragraph response to Peet's summary judgment motion:

> Plaintiffs' cause of action in this case is based on [the] negligence of Defendant in the operation of water craft on public waters. Plaintiffs' petition sets out numerous allegations of negligence. Defendant uses hearsay statements and opinions to attempt to show there is no genuine issue of fact. The Defendant's motion and accompanying exhibits do not cancel these allegations, therefore there [a]re genuine issues of fact to be determined by the Jury. The issue presented is whether or not Defendant was negligent in not operating the water craft with the highest degree of care. This is a question of fact for the jury to decide. Plaintiffs reassert their allegations contained in their petition and they create a disputed issue of fact. It is the burden of the Defendant to show a right to judgment flowing from facts about which there is no genuine dispute. *C–H Bldg. Associates, LLC v. Duffey,* 309 S.W.3d 897, 899 (Mo.App. W.D.2010).

The court granted Peet's motion and entered summary judgment in his favor on the Jordans' wrongful death claim. The Jordans appeal.

## STANDARD OF REVIEW

Appellate review of a summary judgment is essentially *de novo.* *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to party against whom the judgment was entered. *Wills v. Whitlock,* 139 S.W.3d 643, 646 (Mo.App.2004).

"Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Roberts v. BJC Health System,* 391 S.W.3d 433, 437 (Mo. banc 2013). The defendant establishes the right to judgment as a matter of law by showing one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.

*Id.*

We will affirm a summary judgment under any theory supported by the record. *Id.* However, "where it is unclear from the summary judgment record that a basis exists for the grant of summary judgment, we will reverse." *Cody v. Mo. Bd. of Prob. & Parole,* 111 S.W.3d 547, 552 (Mo.App. 2003). " 'An abundance of caution must be exercised in granting a motion for summary judgment because it is an extreme and drastic remedy that borders on the denial of due process because the opposing party is denied its day in court.' " *Bank of Am., N.A. v. Reynolds,* 348 S.W.3d 858, 860 (Mo.App.2011) (citation omitted).

## ANALYSIS

In their sole point on appeal, the Jordans contend the court erred in granting summary judgment in favor of Peet because genuine issues of material fact remain as to whether he was negligent. In response, Peet argues that summary judgment was properly granted because the Jordans failed to comply with Rule 74.04 in demonstrating the existence of genuine issues of material fact.

Rule 74.04(c)(2) requires a non-movant responding to a summary judgment motion to "set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements." The rule also requires the non-movant to support each denial "with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). These requirements are mandatory. *Cnty. Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 708 (Mo. App.2007). A response that does not comply with Rule 74.04(c)(2)'s requirements "with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph." Rule 74.04(c)(2).

In their response, the Jordans did not deny any of Peet's alleged uncontroverted facts. Instead, they reasserted the allegations from their petition and claimed that those allegations created a disputed issue of fact. Rule 74.04(c)(2) expressly deems this type of response insufficient, as the rule states that "[a] denial may not rest upon the mere allegations ... of the party's pleading." The non-movant's failure to deny each factual statement in the summary judgment motion causes " 'all factual assertions properly alleged and supported by the moving party to be considered as true.' " *State v. Spilton*, 315 S.W.3d 350, 356 (Mo. banc 2010) (citation omitted).

Even if the non-movant fails to properly respond to a summary judgment motion and all factual assertions are deemed admitted, however, the motion must still be denied if those factual assertions are not sufficient to entitle the movant to judgment as a matter of law. *Reynolds*, 348 S.W.3d at 860. In Peet's motion for summary judgment, he contended that his thirty-one uncontroverted facts negated the element of his liability. Thus, we must examine his uncontroverted facts to determine whether, if deemed admitted, they require the legal conclusion that Peet did not breach his duty of care.

Reviewing Peet's uncontroverted facts, we note that most of them are superfluous to the issue of his liability. Uncontroverted facts 10–16, 18–19, and 24–31 concern the alleged negligent conduct of Stewart and/or Jordan. This is a case involving joint tortfeasors. Regardless of the conduct of Stewart and/or Jordan, their conduct cannot operate as a matter of law to negate the possibility that Peet also breached his duty of care and was comparatively at fault. Hence, these uncontroverted facts, deemed admitted, are immaterial to a discussion of Peet's liability.

Uncontroverted facts 1–3 and 9 are merely background facts that state when and where the accident occurred and describe the vessels that Stewart and Peet were operating. They do not, alone or collectively, tend to disprove that Peet breached his duty of care.

Uncontroverted facts 4–6 and 8 discuss the extent of the evidence that the Jordans have produced thus far in the case. Uncontroverted fact 4 says that each and every eyewitness to the accident

was listed in the water patrol report and gave a statement that is contained in the water patrol report, while uncontroverted facts 5 and 6 say that the Jordans admit that there are no other witnesses or written statements. These allegations do not tend to negate any salient issue relating to Peet's breach of duty, because they say nothing about the *content* of the witness statements. Uncontroverted fact 8 states that Jordans have endorsed no expert witnesses or opinions supporting their allegations that Peet breached his duty of care. By admitting this fact, the Jordans have admitted only that no expert witnesses have been identified. This admission establishes nothing with regard to whether Peet breached his duty of care.

■ Uncontroverted facts 20–23 address Corporal Henry's investigation and the opinions he reached regarding the causes of the accident. Uncontroverted fact 22 states that Corporal Henry "recorded that the primary cause" of the accident was "[Melissa] Jordan's inexperience" and that "[Melissa] Jordan's inattention and failure to keep a proper lookout were contributing factors." By admitting this fact, the Jordans have admitted only that this is what Corporal Henry recorded—not that his recorded opinion is accurate. Moreover, the substance of Corporal Henry's recorded opinion does not negate that Peet could have contributed to cause the accident. Rather, it states only that Melissa Jordan contributed to cause the accident. Uncontroverted fact 23 states that Corporal Henry "concluded" that "Peet did everything he could do to avoid this collision and he bares (sic) no fault in this

accident." Again, by admitting this fact, the Jordans admitted only that this is Corporal Henry's opinion. This fact does not require the Jordans to admit or deny the accuracy of his opinion.

■ Uncontroverted fact 17 states that Peet took immediate evasive action upon recognizing that Stewart was intersecting his course. This admitted fact does not negate the essential element of Peet's breach of duty as a matter of law. The sufficiency of his evasive action is still at issue.

■ This leaves uncontroverted fact 7. Referring to the witness statements attached to the water patrol report, uncontroverted fact 7 states:

7. Under oath, and according to their respective true and accurate accounts, absolutely no witness stated any facts supporting Plaintiffs['] allegations that:

a. Defendant failed to keep a careful lookout;

b. Upon realizing a reasonable likelihood of collision, Defendant had time to slacken speed, or swerve, or sound a warning, slacked speed or swerve, or slacken speed and sound a warning, or swerve and sound a warning, or that Defendant failed to do the aforementioned; or

c. Defendant was operating his boat at a speed that was too fast in light of the existing conditions.

Even if we assume, *arguendo*, that the witness statements attached to the water patrol report were affidavits,[2] none of the witness statements "say" what appears in uncontroverted fact 7. Rather, uncontroverted fact 7 is simply a series of legal

**2.** The witness statements were not affidavits. "'An affidavit is a declaration on oath, in writing, sworn to by a person before someone authorized to administer such an oath.'" *Maddipati v. Most*, 367 S.W.3d 670, 672 (Mo. App.2012) (citation omitted). The witness statements were in writing and each witness attested that the statement was "a true and accurate account of the events" and "was given by me freely and voluntarily, without fear or threat or promise of reward." There is no indication, however, that the statements were given on oath.

conclusions drawn by Peet's counsel from the witness statements. These conclusions are not facts and, whether deemed admitted or not, cannot support the entry of summary judgment.

Indeed, these conclusions are strikingly similar to those found insufficient to support summary judgment in *Rycraw v. White Castle Systems, Inc.*, 28 S.W.3d 495 (Mo.App.2000). In *Rycraw*, the defendant in a premises liability case filed a motion for summary judgment alleging the plaintiff's inability to establish that the defendant's negligence caused her injury. *Id.* at 497. Three of the defendant's purported uncontroverted facts read:

> 6. In a negligence action, there is a necessity for the plaintiff to show a causal relation between the act complained of and plaintiff's injury.
>
> . . . .
>
> 9. Because plaintiff cannot testify that there was a pool or puddle of liquid on the floor in the White Castle as a matter of fact, plaintiff cannot prove that White Castle breached their duty by the pool/puddle's presence. . . .
>
> 10. As plaintiff cannot prove that White Castle breached their duty, plaintiff cannot prove her cause of action couched in negligence and, therefore, her petition must fail as a matter of law.

*Id.* at 498. These uncontroverted facts were arguably admitted because the plaintiff "failed to admit or deny each of [the defendant's] factual statements in numbered paragraphs corresponding to its paragraphs." *Id.* The court found, however, that the assertions were "only legal conclusions, not assertions of fact." *Id.* The court noted that "[l]egal conclusions are not binding on plaintiffs or the court." *Id.* (citing *Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc.*, 905 S.W.2d 529, 533 (Mo.App.1995)).

The assertions in *Rycraw* are not materially distinguishable from uncontroverted fact 7 in Peet's motion, which summarily draws conclusions about the legal significance to attach to unspecified facts reported by witnesses in the attached statements. The "facts" in the witness statements are not set forth in the summary judgment motion. The Jordans were never asked to admit or deny the truth of any specific facts stated by the witnesses. Like the assertions in *Rycraw*, the assertions in uncontroverted fact 7 are legal conclusions that, even if admitted, are not binding on the Jordans or the court.

It is significant to note that, if alleged in a petition, the conclusions set forth in uncontroverted fact 7 would not satisfy Missouri's pleading requirements. "[L]egal conclusions cannot be pleaded as ultimate facts." *Musser v. Musser*, 281 Mo. 649, 221 S.W. 46, 50 (1920). "Missouri rules of civil procedure demand more than mere conclusions that the pleader alleges without supporting facts." *In re Transit Cas. Co.*, 43 S.W.3d 293, 302 (Mo. banc 2001). A conclusion must be supported by factual allegations that provide the basis for that conclusion, that is, "facts that demonstrate how or why" the conclusion is reached. *Westphal v. Lake Lotawana Ass'n, Inc.*, 95 S.W.3d 144, 152 (Mo.App. 2003).

Although this principle is stated in the context of assessing conclusions in pleadings, the principle is nonetheless relevant here by analogy. Uncontroverted fact 7 is a series of conclusions with no facts alleged to demonstrate how or why the conclusion is reached. A pleading's allegations that are not dissimilar to the allegations in uncontroverted fact 7 have been held to be merely conclusory and, therefore, not factual. See, e.g., *M & H Enters. v. Tri–State Delta Chemicals, Inc.*, 984 S.W.2d 175, 181 (Mo.App.1998) (holding that allegation that the defendants "warranted to [the plaintiffs] that

[the products in question] were fit for the use intended by [the plaintiffs]" was merely conclusory and not factual).

Moreover, the conclusions set forth in uncontroverted fact 7 could not have been offered by any of the witnesses as testimony at trial. "Rule 74.04(e) requires that supporting and opposing affidavits be based on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters stated therein." *Scott v. Ranch Roy–L, Inc.*, 182 S.W.3d 627, 634–35 (Mo.App. 2005). Conclusory statements by a witness "are inadmissible and cannot be used to support summary judgment." *Id.* at 635. For example, in *Scott*, the court disregarded statements in a supporting affidavit that attempted to draw conclusions regarding the legal effects of documents. *Id.* In *Bakewell v. Missouri State Employees' Retirement System*, 668 S.W.2d 224, 227 (Mo.App.1984), the court disregarded language in a supporting affidavit that stated that the denial of medical insurance "was not arbitrary and capricious." In *Stoffel v. Mayfair–Lennox Hotels, Inc.*, 387 S.W.2d 188, 192 (Mo.App.1965), the court disregarded language in affidavits that drew conclusions about an agency relationship, noting that "conclusions of law that are in affidavits are of no effect and are not sufficient to sustain a motion for summary judgment." If "conclusions of law" cannot be relied upon to support summary judgment when set forth in an affidavit, they cannot be relied upon when set forth as uncontroverted facts that were purportedly drawn from affidavits or witness statements.

None of Peet's thirty-one asserted "uncontroverted facts" in his summary judgment motion require the legal conclusion that he did not breach his duty of care. At best, Peet's motion establishes only that the water patrol report and the attached witness statements are the extent of the Jordans' evidence. Although Peet contends those statements do not create a genuine issue of material fact as to his liability, neither Peet's motion nor his memorandum in support of the motion discuss the content of any of the witness statements, other than in the vague and conclusory manner noted above. The water patrol report was sixty-two pages long; moreover, in addition to Corporal Henry's and Peet's statements, the report contained a typed statement from a second law-enforcement officer and the hand-written statements of thirteen different fact witnesses. It was Peet's obligation to demonstrate his entitlement to summary judgment; yet his motion fails to do so because it does not specifically discuss the contents of the lengthy water patrol report. Instead, Peet's motion puts the burden on the Jordans or the circuit court to review these materials to establish a triable issue. Therefore, despite the Jordans' non-compliance with Rule 74.04 in responding to Peet's motion, Peet was not entitled to summary judgment because he failed to demonstrate the absence of a genuine issue of material fact and a right to judgment as a matter of law. "Since summary judgment is a drastic remedy, it is inappropriate unless the prevailing party has shown by unassailable proof, from which no genuine issue of material fact on any controlling issue exists, that as a matter of law judgment should be entered in his favor." *Bakewell*, 668 S.W.2d at 226.

### CONCLUSION

We reverse the grant of summary judgment in favor of Peet and remand the case for further proceedings.

ALL CONCUR.